UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COURTNEY MATHIS,

        Petitioner,

    v.

NICK J. LUDWICK,

        Respondent.[1]

—————————————————/

CASE NO. 2:06-CV-10359
JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PAUL J. KOMIVES


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Plea* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Innocence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E.    *Voluntariness of Plea and Ineffective Assistance of Counsel (Claims II-IV)* . . . . . . . . . . . . . . . . . . 11
        1.    *Voluntariness and Ineffective Assistance (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . 12
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.    *Failure to Comply with MCR 6.302 (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        3.    *Suppression of Evidence (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

\*     \*     \*     \*     \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus.

II.   <u>REPORT</u>:

---

[1]By Order entered this date, Nick J. Ludwick has been substituted for Shirlee A. Harry as the proper respondent in this action.

A.    *Procedural History*

1.    Petitioner Courtney Mathis is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.    On May 17, 2002, petitioner was convicted of one count of first degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b, pursuant to his plea of *nolo contendere* in the Wayne County Circuit Court.  Petitioner's plea was entered pursuant to a plea agreement in which the prosecutor agreed to a sentence of 10-20 years' imprisonment and to dismiss four other CSC charges.  On June 5, 2002, prior to sentencing, petitioner moved to withdraw his plea.  The motion was denied, and he was sentenced to a term of 10-20 years' imprisonment.

3.    In May 2003 petitioner, through counsel, filed a motion to withdraw his plea, arguing that counsel was ineffective both in advising him of the sentencing guidelines applicable to his case and for failing to perfect his alibi.  The trial court denied the motion on June 27, 2003, and denied petitioner's motion for rehearing on July 25, 2003.

4.    Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claim:

> MR. MATHIS WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE HE DID NOT TENDER A KNOWING, INTELLIGENT AND VOLUNTARY PLEA TO THE COURT DUE TO THE INEFFECTIVENESS OF HIS TRIAL COUNSEL FOR ADVISING HIM THAT HE WAS RECEIVING A BELOW GUIDELINE SENTENCE WHEN COUNSEL AND THE TRIAL COURT FAILED TO ACCURATELY SCORE THE MINIMUM SENTENCING GUIDELINES.

The court of appeals dismissed petitioner's application as untimely.  *See People v. Mathis*, No. 250393 (Mich. Ct. App. Sept. 3, 2003).

5.    Petitioner did not appeal this decision to the Michigan Supreme Court.

6. In January 2004, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508. The motion was denied on April 21, 2004. Petitioner filed an application for leave to appeal this decision in the Michigan Court of Appeals, raising essentially the same claim that he had raised on direct appeal. The court of appeals denied petitioner's application in a standard order, "for lack of merit in the grounds presented." *People v. Mathis*, No. 255504 (Mich. Ct. App. June 29, 2004). Petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court. The supreme court denied the application in a standard order based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief." *People v. Mathis*, 471 Mich. 952, 690 N.W.2d 112 (2004).

7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 26, 2006. As grounds for the writ of habeas corpus, he raises four claims: (1) innocence; (2) ineffective assistance of trial counsel; (3) failure of the trial court to comply with MICH. CT. R. 6.302; and (4) failure of the prosecutor to turn over favorable evidence.

8. Respondent filed his answer on July 31, 2006. He contends that petitioner's claims are unexhausted and without merit.

B. *Factual Background Underlying Petitioner's Plea*

Petitioner pleaded *nolo contendere* to one count of first degree criminal sexual conduct in exchange for a 10-20 year sentence agreement and the dismissal of three other CSC charges (one CSC-I and two CSC-III charges) and an habitual offender enhancement. At the plea hearing, the trial judge explained to petitioner that the maximum penalty on the CSC-I charges was life imprisonment, and that the maximum penalty on the CSC-III charges was 15 years' imprisonment, but with the habitual offender notice could be enhanced up to life imprisonment. Petitioner

indicated that he understood the possible sentences he faced. *See* Plea Tr., at 6-7. The court also informed petitioner of the rights he would have if he proceeded to trial including the rights to: a jury trial, a presumption of innocence until proven guilty beyond a reasonable doubt, confront the witnesses against him, call witnesses in his defense and have service of process to secure their presence, and remain silent. Petitioner indicated that he understood these rights and that he was giving up these rights by pleading *nolo contendere*. *See id.* at 7-9. Petitioner also indicated that he understood that if found guilty after a trial he would have an absolute right to appeal, but would only be able to ask for leave to appeal if he pleaded *nolo contendere*. *See id.* at 9. Petitioner denied that anyone had threatened or pressured him into entering his plea, or made any promises to him. *See id.*

By agreement of the parties, the prosecutor then set forth the factual basis for the plea, based on the report of the police investigator:

> Between the time of July through August 2001 the complainant, Ms. Angel Mitchell, a runaway from Davenport Girls Home, went to defendant number two who was Deangelo Gibbs and to defendant number one, this defendant, Courtney Mathis's residence.
>
> Once there, the defendant, Courtney Mathis, demanded that complainant, a minor child, perform oral sex on him in exchange for room and board at his residence and defendant number two, Deangelo Gibbs. Complainant initially refused.
>
> Deangelo Gibbs told [complainant] that she had to do it in order to stay at that location, so the complainant complied and proceeded to perform oral sex on defendant Courtney Mathis while defendant number two, Deangelo Gibbs watched.
>
> Deangelo Gibbs then took complainant into another room and had sexual intercourse with her penetrating her vagina with his penis.
>
> The next day Courtney Mathis again demanded that complainant perform oral sex on him. Complainant initially refused and again complied to perform oral sex on Courtney Mathis.
>
> Courtney Mathis then stated, "I'm getting tired of this" and demanded that complainant have sexual intercourse with him. Complainant adamantly refused.
>
> Defendant Deangelo Gibbs entered the room and held complainant down on the bed while defendant Courtney Mathis forced sexual intercourse with her

penetrating her vagina with his penis.

*Id.* at 9-10.  The trial court then accepted petitioner's plea, finding that it was understanding and voluntary.  *See id.* at 11.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S.

at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also, Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also, Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also, Mitchell*, 540 U.S. at 16. Further, although the requirements

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Innocence (Claim I)*[2]

Petitioner first claims that he is entitled to habeas relief because he is innocent of the crime to which he pleaded *nolo contendere*.  This claim does not present a cognizable basis for habeas relief.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

---

[2]Respondent contends that several of petitioner's claims are unexhausted.  The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).  A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).  Despite the exhaustion requirement, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added).  Thus, a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987).  In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims, *see Cain*, 947 F.2d at 820, and respondent explicitly asks the Court to take this approach.  In addition, requiring further exhaustion at this point raises difficult procedural questions concerning the interplay between the exhaustion requirement and the statute of limitations governing habeas petitions. *See generally Rhines v. Weber*, 544 U.S. 269 (2005) Because, as discussed below, petitioner is not entitled to relief on any of his claims, the Court should dismiss the claims on the merits rather than require further review in the state courts.

2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Nor does petitioner's assertion of innocence after the plea was entered but prior to sentencing render involuntary his otherwise valid plea. As another court observed long ago, there are "no cases which hold that denial of guilt, under oath, subsequent to the entry of a guilty plea but prior to sentencing renders the plea involuntary as a matter of constitutional law." *Hansen v. Mathews*, 296 F. Supp. 1398, 1331 (E.D. Wis. 1969), *aff'd*, 424 F.2d 1205 (7th Cir. 1970). Although *Hansen* was decided nearly forty years ago, this observation holds true today. It is well established that "factual guilt or innocence . . . is irrelevant to the question of whether [a defendant's] plea was voluntary." *United States ex rel. Smith v. Johnson*, 403 F. Supp. 1381, 1397

n.28 (E.D. Pa. 1975), *aff'd*, 538 F.2d 322 (3d Cir. 1976); *see also*, *Stewart v. Peters*, 958 F.2d 1379, 1385 (7th Cir. 1992) ("A guilty plea is no more involuntary because the defendant believes he is innocent than the settlement of a civil lawsuit is involuntary because the defendant refuses to admit liability and may believe in all sincerity that he is not liable in the least."). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).[3] "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).

Nor can petitioner show a denial of his constitutional rights by the trial court's failure to allow him to withdraw his plea. Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A criminal defendant has no constitutional right to withdraw a validly and voluntarily entered guilty plea. *See Chene v. Abramajtys*, No. 95-1491, 1996 WL 34902, at *2 (6th Cir. Jan. 29, 1996); *Metcalf v. Bock*, No. 00-10361-BC, 2002 WL 31749157, at *5 (E.D. Mich. Dec. 5, 2002) (Lawson, J.); *Freeman v. Muncy*, 748 F. Supp. 423, 429 (E.D. Va. 1990); *Williams v. Smith*, 454 F. Supp. 692, 696 (W.D.N.Y. 1978), *aff'd*, 591 F.2d 169 (2d Cir. 1979). Thus, the trial court's

---

[3]In *Alford*, the Court observed that it is appropriate to impose special safeguards when a defendant pleads guilty while maintaining his innocence to insure that the decision to plead guilty is an intelligent choice in light of the circumstances facing the defendant. *See Alford*, 400 U.S. at 38 n.10. Petitioner did not maintain his innocence at the time the plea was taken, and thus these special rules are inapplicable here.

failure to allow petitioner to withdraw his plea under the governing state court rules does not state a cognizable basis for habeas relief.

Further, even under the standard applicable to pleas in federal court under FED. R. CRIM. P. 11, petitioner cannot show that he would be entitled to withdrawal of his plea. Under this standard, a claim of innocence alone does not entitle a defendant to withdraw his plea; rather, withdrawal is permitted only in the "most compelling of circumstances indicating the innocence of the defendant." *United States v. Tolson*, 372 F. Supp. 2d 1, 24 (D.D.C. 2005), *aff'd*, ___ Fed. Appx. ___, 2008 WL 441764 (D.C. Cir. Jan. 25, 2008); *see also*, *United States v. Robinson*, 498 F. Supp. 2d 328, 331-32 (D.D.C. 2007). To be entitled to withdrawal, a "defendant must come forward with some evidentiary support for his innocence." *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 595 (E.D. Va. 2004); *see also*, *United States v. Hodges*, 259 F.3d 655, 661 (7th Cir. 2001). Here, petitioner claims his innocence is shown by a videotape in the prosecution's possession and statements of purported alibi witnesses. None of this evidence, however, establishes petitioner's innocence.

With respect to the videotape, the police obtained a search warrant based on a statement from petitioner's uncle which included an allegation that petitioner was in possession of a videotape showing the victim engaged in sexual acts with various men, including petitioner. Petitioner contends that a review of the tape would show that he was not, in fact, any of the men having sex with the victim on the tape. This evidence, however, does not establish that petitioner did not sexually assault the victim. Nothing in the record suggests that the victim was videotaped every time she had sex or that the videotape recorded petitioner's home and the victim 24 hours a day. Thus, petitioner's failure to appear on the tape, even if true, does not establish that he did not have

sex with the victim at any time. Likewise, the witness statements attached by petitioner to his habeas application, *see* Pet., Ex. F, do not support his claim of innocence. None of the witnesses states that he or she constantly was present at the home during the victim's stay there, and thus they can provide no alibi for petitioner or eyewitness testimony to refute the victim's claim. Rather, each witness merely states, in some fashion, that while at petitioner's home the victim was drinking and claimed to be 18 years old, and that the videotape was left with petitioner by another person. As explained above, the circumstances regarding the victim do not support a claim of innocence. Likewise, the fact that the victim was drinking and claimed to be 18 years old does not support such a claim. Petitioner's conviction was based on the age of the victim, she being under the age of consent. The crime of criminal sexual conduct in these circumstances is a strict liability offense. Therefore, petitioner's knowledge of the victim's age was not an element of the offense, and his alleged mistake regarding her age was not a defense to the charges. *See People v. Nyx*, 479 Mich. 112, 141-42, 734 N.W.2d 548, 565-66 (2007); *People v. Cash*, 419 Mich. 230, 238-46, 351 N.W.2d 822, 824-28 (1984). Thus, neither the videotape nor the witness statement proffered by petitioner provide evidence of his innocence which would support withdrawal of his plea even under the more lenient standard applicable in federal criminal case.

In short, "[t]he fact that petitioner tried to back out of the 'bargain' by asserting his innocence after entering his plea . . . does not, per se, make the previously entered plea involuntary[, and his] allegation of innocence alone is not sufficient to compel the granting of a motion to withdraw a guilty plea." *Hansen*, 296 F. Supp. at 1331. Further, his claim of innocence standing alone provides no basis for habeas relief. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.   *Voluntariness of Plea and Ineffective Assistance of Counsel (Claims II-IV)*

The bulk of petitioner's claims relate to the voluntariness of his plea and the effectiveness of counsel in connection with the plea.  Primarily, petitioner claims that counsel was ineffective, and his plea involuntary, because he entered the plea based on counsel's advice that the agreed 10-20 year sentence was below the applicable guideline range, but that counsel was incorrect in scoring the guidelines.  Petitioner also contends that his plea was involuntary because the trial court failed to comply with MICH. CT. R. 6.302 in taking his plea, and because the prosecutor suppressed exculpatory evidence prior to the plea.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Voluntariness and Ineffective Assistance (Claim II)*

a.   *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances.  *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea.  *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153.  A solemn declaration of guilt by the defendant carries a presumption of truthfulness.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Blackledge*, 431 U.S. at 74.  Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]"  *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id.* at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the

totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also, O'Hara*, 24 F.3d at 828. Applying these standards to petitioner's ineffective assistance claims, the Court should conclude that petitioner was not denied effective assistance of counsel.

### b. Analysis

Apart from the two issues discussed below–*i.e.*, the trial court's compliance with Rule 6.302 and the prosecutor's suppression of evidence–petitioner's voluntariness claim is tied directly to counsel's alleged deficient performance. Whether counsel was ineffective, thus rendering petitioner's plea invalid under the Sixth Amendment, is a question which is "doctrinally distinct" from the question whether the plea was sufficiently knowing and voluntary under the Due Process Clause. *See United States v. Wilson*, 922 F.2d 1336, 1340 (7th Cir. 1991).

With respect to the voluntariness issue, petitioner does not contend that he was coerced into pleading guilty or that the decision was not his own, nor could he given that he stated at the plea hearing that he had not been threatened or coerced into pleading guilty. *See Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Likewise, petitioner does not contend, nor could he, that he did not receive sufficient explanation of various

things required to make his voluntary. The Supreme Court cases discussing the validity of guilty pleas under the Due Process Clause establish three things of which a defendant must be informed before a guilty plea is knowing and voluntary: (1) the actual charge against the defendant, *see Bousley v. United States*, 523 U.S. 614, 618 (1998); (2) the direct consequences of the plea, *see Mabry*, 467 U.S. at 509; and (3) the rights that the defendant is waiving by pleading guilty, *see Henderson*, 426 U.S. at 645 n.13. As discussed in part B of this Report, *supra*, the plea hearing transcript establishes that petitioner was informed of each of these things.

Rather, petitioner contends that his plea was involuntary because counsel mistakenly informed him that he would receive a below guideline sentence, when in fact a correct scoring of the guidelines establishes that the sentence was within the guidelines. At the outset, it is important to clarify what petitioner is *not* claiming. He does not claim that counsel promised him a sentence lower than the one he actually received. It is clear that petitioner knew he was agreeing to a 10-20 year sentence, and that is precisely the sentence imposed by the trial court. Petitioner claims, rather, that the deal was made attractive to him because it was presented as a below guideline sentence. This claim fails on a number of fronts.

Petitioner's claim is in the nature of an illusory plea claim–that is, a claim that he did not really receive any benefit from pleading *nolo contendere*. Even if petitioner is correct that his sentence was not a below guideline sentence for the crime to which he pleaded guilty–an issue discussed below–he still received a substantial benefit by pleading guilty. First, under Michigan's indeterminate sentencing scheme, the guidelines affected only petitioner's minimum term of imprisonment. *See People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool*, 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP.

LAWS § 769.8. Petitioner's maximum sentence was set by statute, in this case any term of years up to life imprisonment. Thus, upon conviction following trial, the judge could have sentenced petitioner up to life imprisonment on the maximum, but petitioner's maximum was capped at 20 years under the plea agreement. This alone was a substantial benefit to petitioner. Further, the plea agreement withdrew the habitual offender notice. Had the habitual offender enhancement been found after trial, it could have increased petitioner's sentence even further.

Turning to the specifics of petitioner's claim, he cannot show that counsel was ineffective in advising him with respect to his sentencing guidelines, for a number of reasons. First, petitioner's claim is based on his view of the proper guidelines scoring in light of his plea. For example, he claims that Offense Variable (OV) 4, which was scored at 10 points for psychological injury, should have been scored at zero points because there was no evidence that the victim needed and received psychological counseling. This is true, but it may not have been true had petitioner proceeded to trial and a full evidentiary record developed through the victim's testimony. It was the difference between petitioner's sentencing exposure after trial and the agreed sentence of 10-20 years which was relevant to the decision to plead guilty. In other words, it is not likely that petitioner accepted the plea deal because the sentence was presented as being below the guidelines applicable to the plea, but because 10-20 years was a good sentence in light of the sentence exposure he risked if he proceeded to trial on all counts. As the trial judge observed in denying petitioner's second motion to withdraw his plea, the issue was not the guidelines score if he pleaded guilty. Rather, "[t]he issue was the guidelines if he were convicted. He was charged with several counts. . . . I think had he been convicted, and with the evidence in this case, based on the testimony even that I heard in the taking of the plea, I mean come on. Come on. If this man had been convicted, this sentence was

extremely below the guidelines." Hr'g Tr., dated 7/25/03, at 22.

Second, to the extent petitioner claims that his plea was involuntary because it was based on counsel's erroneous advice regarding the sentence the claim is without merit. As the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
>
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993).

Third, petitioner cannot show that counsel was incorrect in advising him that the 10 year minimum sentence was below the applicable guideline range. Petitioner was convicted of a Class A felony, *see* MICH. COMP. LAWS § 777.16y, subjecting him to the sentencing grid found in MICH. COMP. LAWS § 777.62. The sentencing information report (SIR) computed a prior record variable (PRV) score of 45, placing petitioner at PRV Level D.[4] Although petitioner claims that the PRV score was incorrect, under his calculation he was still at Level D, so the Court need not consider this scoring.[5] With respect to the offense variables, the SIR assigns the following scores: OV4–10

---

[4]A copy of the SIR is appended to petitioner's brief in the Michigan Court of Appeals on appeal from the trial court's denial of his motion for relief from judgment.

[5]The specific challenges raised by petitioner to the guidelines scoring are set forth at pages 3-4 of his brief on direct appeal, which is attached to his habeas application.

points; OV8–15 points; OV10–10 points; OV12–10 points; OV13–25 points; and OV14–10 points.[6] This resulted in a total OV Level V. The sentencing grid therefore mandated a sentencing range, for the minimum term, of 135-225 months imprisonment. Petitioner challenges the scoring of each offense variable other than OV12, and claims that each of them should have been scored at zero. This, petitioner claims, results in a OV Level III, in turn resulting in a guideline range of 81-135 months.

At the hearing on petitioner's second motion to withdraw his plea, the trial court agreed with petitioner that OV4 and OV8 were improperly scored, and should have been scored at zero. *See* Hr'g Tr., dated 7/25/03, at 9-10, 14-5. However, the court disagreed with petitioner on OV13 and OV14, concluding that they were properly scored. *See id.* at 17-18, 19-20. In analyzing petitioner's ineffective assistance of counsel claims, these expressions of state law are binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, under the proper scoring as determined by the trial court, petitioner's OV score should have been 60, which would have placed him at OV Level IV and a resulting sentencing range of 126-210 months. Thus, petitioner's agreed upon sentence was still below the applicable guidelines, even if the Court views the appropriate inquiry as the guidelines relevant only to the offense to which petitioner pleaded and not the guidelines relevant to all the offenses had petitioner been convicted at trial. For these three reasons, petitioner cannot show that counsel was ineffective or that counsel's performance rendered his plea involuntary.

In short, counsel was faced with a strong case against petitioner on four separate charges each of which, with an habitual offender enhancement, carried a maximum penalty of life

---

[6]All other offense variables were scored at zero points.

imprisonment. Counsel could have reasonably concluded that petitioner's best chance to avoid a significantly longer term of imprisonment was to plead guilty to one count with a sentence guarantee of 10-20 years. *See, e.g.*, *Luyanda v. United States*, No. 95-2615, 1996 WL 85012, at *1 (2d Cir. Feb. 28, 1996) ("Counsel's advice to plead guilty and thereby avoid exposure to a life sentence was anything but ineffective."); *Cox v. Lockhart*, 970 F.2d 448, 455-56 (8th Cir. 1992) ("All things considered, advising appellant Cox to accept the plea, rather than risk the death penalty or life without parole, appears to have been a reasonable strategy amounting to reasonably competent advice."); *Johnson v. United States*, 267 F.2d 813, 814-15 (9th Cir. 1959). Petitioner accepted this advice not because the deal resulted in a below guideline sentence in the abstract, but because it significantly lowered his overall sentencing exposure. Petitioner has offered nothing to show that counsel's preliminary estimate of the guidelines, even if mistaken, amounted to constitutionally deficient performance or reduced the benefit he received by pleading *nolo contendere*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.      *Failure to Comply with MCR 6.302 (Claim III)*

Petitioner also contends that his plea was involuntary because the trial court failed to comply with MICH. CT. R. 6.302. This claim does not state a cognizable basis for habeas relief. It is well established that habeas corpus relief is available only to correct errors of federal constitutional law. Habeas relief does not lie for a state court's errors in applying state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As explained above, petitioner's plea was voluntary and intelligent under the federal constitutional standards governing the validity of pleas. This being the case, the state court's alleged failure to comply with the state court rule governing the

19

taking of pleas does not provide a basis for habeas relief. *See Russ v. Hofbauer*, No. 05-CV-72235, 2007 WL 541917, at *4 (E.D. Mich. Feb. 16, 2007) (Battani, J.); *Bair v. Phillips*, 106 F. Supp. 2d 934, 943 (E.D. Mich. 2000) (Duggan, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Suppression of Evidence (Claim IV)*

Finally, petitioner contends that his plea was involuntary because the prosecutor suppressed exculpatory evidence. Specifically, petitioner argues that the prosecutor failed to turn over the videotape which he claims shows other men, but not himself, having sex with the victim. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also, Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

It is questionable whether petitioner's claim even states a constitutional violation, much

less a violation of clearly established federal law under § 2254(d)(1). The Supreme Court has never held that the *Brady* rule requires disclosure of exculpatory evidence prior to the entry of a plea, rather than for use at trial. On the contrary, the Supreme Court has repeatedly referenced the *Brady* rule as necessary to secure a fair trial before the fact finder. In *Brady* itself the Court explained that "[a] prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him . . . helps *shape a trial* that bears heavily on the accused." *Brady*, 373 U.S. at 87-88 (emphasis added). In *United States v. Agurs*, 427 U.S. 97 (1976), the Court explained that the rule prohibiting the use of perjured testimony, upon which the *Brady* rule is founded, is based on the notion that the use of perjured testimony represents "a corruption of the truth-seeking function of the trial process." *Id.* at 104. Similarly, in *United States v. Bagley*, 473 U.S. 667 (1985), the Court explained that "suppression of evidence amounts to a constitutional violation *only* if it deprives the defendant of a *fair trial.*" *Id.* at 678 (emphasis added). Finally, in *Strickler* the Court explained that, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different *verdict.*" *Strickler*, 527 U.S. at 281 (emphasis added).

In light of this focus on the effects of suppressing evidence on the truth-finding function of the jury at trial, several courts have held that the failure to disclose exculpatory information prior to the taking of a plea does not render the plea involuntary or constitute a *Brady* violation. The reasoning of this rule was aptly explained by the Fifth Circuit: "Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to a trial is not a constitutional violation." *Matthew v. Johnson*, 201 F.3d 353, 361-

62 (5th Cir. 2000). To be sure, other courts have reached a contrary conclusion, including the Sixth Circuit. *See , e.g., Sanchez v. United State*, 50 F.3d 1448, 1453-54 (9th Cir. 1995); *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998); *Campbell v. Marshall*, 769 F.2d 314, 324 (6th Cir. 1985). The continued validity of these cases, however, is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002). In that case, the Court held that a plea is not rendered invalid by the prosecutor's failure to disclosure exculpatory impeachment information prior to the entry of the plea. *See id.* at 628-33. While the Court expressly declined to consider whether this rule also applied to exculpatory substantive evidence,[7] the Court's reasoning focuses on the *Brady* rule's connection to the truth-finding function of the trial, suggesting that the holding in *Ruiz* extends to exculpatory substantive evidence as well. Indeed, at some points the Court did not distinguish between the two types of exculpatory evidence, going so far as to note that "due process considerations, the very same considerations that led this Court to find trial related rights to exculpatory and impeachment information in *Brady* and *Giglio*, argue against the existence of the 'right'" to pre-plea disclosure. *Ruiz*, 536 U.S. at 631.

More importantly, even if the court of appeals cases recognizing such a right survive *Ruiz*, those cases alone cannot provide a right to habeas relief. Under § 2254, habeas relief is available only if the state courts violated clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). In light of the reasoning of *Ruiz*, the Court's repeated description of *Brady* as grounded in the right to a fair trial, the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among the courts of

---

[7]Justice Thomas, concurring in the judgment, saw no reason to distinguish between exculpatory substantive evidence and exculpatory impeachment evidence. *See Ruiz*, 536 U.S. at 633-34 (Thomas, J., concurring in the judgment).

appeals on this issue, it cannot be said that the right petitioner seeks to invoke here constitutes clearly established law under § 2254(d)(1). *See Jones v. Bryant*, 27 Fed. Appx. 699, 701 (7th Cir. 2001).

Further, even assuming that such a claim is viable, petitioner cannot establish a *Brady* violation here or show that the alleged suppression of the videotape affected his decision to plead guilty. As the Sixth Circuit explained in *Campbell*, suppression renders a plea involuntary only where the suppressed evidence "would have been controlling in the decision whether to plead." *Campbell*, 769 F.2d at 324. "Moreover, a state's failure to disclose potentially exculpatory evidence does not render the plea involuntary when the belated disclosure of this information does not detract from the credible factual basis for the habeas petitioner's otherwise voluntary and consensual plea." *Giegler v. Trombley*, No. 03-CV-70962, 2003 WL 22480131, at *5 (E.D. Mich. Oct. 15, 2003) (Roberts, J.) (citing *Campbell*, 769 F.2d at 321; *Swingle v. Money*, 215 F. Supp. 2d at 919, 924 (N.D. Ohio 2002). Here, petitioner cannot show that the prosecution violated *Brady*, or that the standard of *Campbell* is satisfied, for two reasons.

First, even if the prosecution failed to turn over the videotape, petitioner cannot show that the evidence contained on the tape was "suppressed" within the meaning of *Brady* or that the failure to turn over the tape impacted his decision to plead guilty. It is well established that "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotations omitted); *see also*, *Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004). While the tape might have been necessary at trial, at the plea

stage all petitioner needed to know to make an intelligent weighing of his options was whether he was or was not shown on the tape having sex with the victim. And this knowledge was well within petitioner's own knowledge, regardless of whether he had the tape in his possession at the time he pleaded *nolo contendere*. Thus, petitioner "knew . . . the essential facts permitting him to take advantage of any exculpatory information," that is, he knew the essential facts permitting him to assess the strengths and weaknesses of the government's case. Thus, the videotape itself was not suppressed and disclosure of the videotape "would [not] have been controlling in the decision whether to plead." *Campbell*, 769 F.2d at 324.

Second, petitioner cannot establish that the tape was exculpatory or material. As explained in connection with petitioner's innocence claim, the fact (if true) that he was not on the videotape does nothing to negate the victim's claim that petitioner sexually assaulted her throughout her stay at his home. The video does not purport to be a complete record of the events that occurred throughout the home during the entire time that the victim was there, and thus his absence on the tape provides no material exculpatory evidence that he did not commit the crimes charged. *See Herrera v. Davis*, 54 Fed. Appx. 861, 863 (7th Cir. 2002); *Padro v. Strack*, 169 F. Supp. 2d 177, 181 (S.D.N.Y. 2001); *State v. Ferguson*, 20 S.W.3d 485, 504 (Mo. 2000); *cf. United States v. Walton*, No. 04-508-03, 2007 WL 2108118, at *9 (E.D. Pa. July 20, 2007); *McCargo v. Costello*, 235 F. Supp. 2d 173, 176 (E.D.N.Y. 2002).

In short, it is questionable whether the prosecutor's alleged failure to disclose the videotape prior to petitioner's plea even raises a federal constitutional issue. Even if it does, however, the claim is without merit because petitioner cannot show that the information in the videotape was suppressed, exculpatory, or material. The allegedly suppressed evidence "would [not] have been

controlling in the decision whether to plead," *Campbell*, 769 F.2d at 324, and the alleged suppression of the videotape "does not detract from the credible factual basis for [petitioner's] otherwise voluntary and consensual plea." *Giegler*, 2003 WL 22480131, at *5. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing

party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/30/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on May 30, 2008.

s/Eddrey Butts
Case Manager